# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIAN LEAHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 11070 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| MARK SIMON, PAUL JOSEPH MORELOCK, BRETT SCROGGINS, NICHOLAS HONIOTES, MATTHEW ANDERSON, BRIAN KASHER, and NICHOLAS REID, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

After he was seized and searched based on reports of hunting on property without the permission of the landowner, Plaintiff Brian Leahy brought this action against seven Illinois Department of Natural Resources ("IDNR") Conservation Police Department officers: Mark Simon, Paul Joseph Morelock, Brett Scroggins, Nicholas Honiotes, Matthew Anderson, Brian Kasher, and Nicholas Reid (collectively, the "IDNR Defendants").[1] In the third amended complaint, Leahy bring the following claims under 42 U.S.C. § 1983: false arrest and unlawful detention against Simon, Morelock, Scroggins, Honiotes, Anderson, and Kasher (counts I and II); unreasonable seizure against Simon, Morelock, Scroggins, Honiotes, Anderson, and Kasher (counts III and IV); unreasonable search and seizure of property against Honiotes (count V); failure to intervene against Simon, Anderson, and Kasher (count VI); and civil conspiracy against the IDNR Defendants (count XI). Leahy also pursues the following state law claims: false arrest against Simon, Morelock, Scroggins, Honiotes, Anderson, and Kasher (counts VII

---

[1] Initially, Leahy, along with James Powell, brought this case against the IDNR Defendants, the City of Joliet and one of its police officers, and the Forest Preserve District of Will County and two of its police officers. The third amended complaint only includes claims by Leahy against the IDNR Defendants.

and VIII); false imprisonment against Simon, Morelock, Scroggins, Honiotes, Anderson, and Kasher (counts IX and X); and civil conspiracy against the IDNR Defendants (count XII). The IDNR Defendants have filed for summary judgment on all claims, arguing that they are entitled to qualified immunity for their actions. The Court agrees that the IDNR Defendants had probable cause for their actions and that no reasonable juror could find a Fourth Amendment violation arising from the search or seizure, meaning the IDNR Defendants have qualified immunity from the federal claims and Leahy cannot prevail on the state law claims.

## BACKGROUND[2]

Cullinan Properties owns property located on the northeast frontage road near the intersection of Interstate 55 and Interstate 80 in Will County, Illinois. Through its chairman, Diane Cullinan Oberhelman, Cullinan Properties lodged a trespass complaint with the IDNR on August 30, 2015. The complaint indicated that no person could enter or remain on the property without proper authorization and that hunting was strictly prohibited, except as authorized. The complaint exempted Reid and Greg Humphrey, a Joliet police officer, from the restriction on hunting. The complaint gave IDNR the ability to take any necessary enforcement action against individuals who trespassed on the property or otherwise violated the complaint.

In November 2015, Leahy and another individual, George Del Rio, overheard a phone call between Oberhelman and James Powell, in which they believed Oberhelman gave Powell permission to hunt on the property as long as Powell informed the other hunters with similar authorization. On November 28, Powell sent Oberhelman an email memorializing that conversation and indicating that he informed Reid he had permission to hunt at the property.

---

[2] The facts in this section are derived from the Joint Statement of Undisputed Material Facts and Leahy's response. The Court has considered the IDNR Defendants' objections to Leahy's additional facts and the supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment. All facts are taken in the light most favorable to Leahy, the non-movant.

On December 3, Reid verified the validity of the trespass complaint with Jenna, the secretary for Cullinan Properties. Jenna indicated that no individuals had been added to the list of permitted hunters at the property and that Powell specifically did not have permission to hunt on the property. Reid also sent Oberhelman an email that day, seeking clarification as to whether Powell had permission to hunt on the property and indicating that he had learned that Powell intended to hunt on the property that day. In his email, Reid also refused Oberhelman's invitation to hunt on the property on ethical grounds.

On December 4, Leahy, accompanied by Powell, went to the property to hunt deer. Around 3 p.m., they had contact with Will County Forest Preserve District officers. After the encounter, the Will County Forest Preserve District officers then informed Reid that Powell was hunting on the property. Reid then called Simon to relay this information and that, the previous day, Jenna, the Cullinan Properties secretary, reaffirmed the trespass complaint. Simon called Honiotes at 3:04 p.m., asking him to respond to the property to address Powell's presence hunting there without permission. Simon also headed to the property to assist. En route, he spoke with Jenna. Although Oberhelman was not available, Jenna relayed that Powell did not have permission to hunt on the property and confirmed that she had told Reid this the previous day. Jenna also told Simon that she was present for two phone calls between Oberhelman and Powell, in which Oberhelman made clear that Powell did not have permission to hunt on the property. Before Simon arrived at the property, Jenna called to advise him that she had spoken with Oberhelman and that Oberhelman confirmed that Powell did not have permission to hunt on the property.

Honiotes arrived at the property at 3:29 p.m. He spoke with the Will County Forest Preserve District officers on the scene, who advised Honiotes of Powell's location on the

3

property. Simon, along with IDNR officers Anderson and Kasher, arrived at the property shortly thereafter. Simon also spoke with the Will County Forest Preserve District officers who stated they found Powell in the tree farm part of the property and that Powell admitted to hunting there. While heading that way, Simon noticed a voicemail from Oberhelman, in which she apologized that Simon had to address a trespassing issue, thanked him for his service, and indicated she would try him again the next day.

Around 4 p.m., Honiotes, Simon, Anderson, and Kasher located Powell and Leahy in an elevated blind. Leahy had on camouflage pants and a jacket as well as a blaze orange hunting vest or coat and an orange hat. Powell had on an orange hunting vest or coat. Honiotes entered the blind and spoke to both Powell and Leahy. They told Honiotes that only Leahy was hunting. Leahy identified himself as a Chicago police officer. A rifle, owned by Powell but which Leahy acknowledged borrowing, was several feet from Leahy. Honiotes asked if Leahy had any weapons on him and had Leahy empty his pockets. Leahy said he did not have his service revolver on him and claimed that the only hunting equipment he owned was on his person. Honiotes patted down the outer portions of Leahy's hunting jacket and vest to ensure Leahy had no other firearms, hunting equipment, or contraband. Powell gave Honiotes permission to search his backpack. Honiotes then removed the hunting gear from the backpack, photographed it, and repacked the backpack. Both Leahy and Powell provided Honiotes with their hunting documents and firearms permits.

After some further discussion while at the blind, Honiotes and the other IDNR officers present asked Powell and Leahy to gather their belongings and walk to the IDNR vehicles. En route, they came across Powell's truck. Honiotes asked Powell if he could search Powell's truck to determine if they had additional hunting rifles. Powell gave permission to look in the bed of

the truck but not the passenger compartment. Honiotes found an empty gun case and a duck in the bed of the truck. Powell admitted to having shot the duck earlier that day. After the IDNR officers searched Powell's vehicle, they instructed Powell and Leahy to drive approximately 100 yards down the road to where the IDNR vehicles were parked.

During the parties' discussions, Powell informed the IDNR officers present that Oberhelman had given him permission to hunt on the property. He also gave Oberhelman's phone number to Simon and asked that Simon contact her to resolve the situation. Simon attempted to contact Oberhelman several times with no success. Eventually, Honiotes issued a citation to Leahy for unlawful hunting without the permission of the landowner in violation of 520 Ill. Comp. Stat. 5/2.33(t) and to Powell for being an accessory to the same offense. After receiving the citations, Powell and Leahy left on their own recognizance. Leahy's ticket was dismissed on February 11, 2016. But, on June 30, 2017, Powell pleaded guilty to the charge of unlawful hunting without the permission of the landowner.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

The IDNR Defendants argue that qualified immunity shields them from liability on all of Leahy's claims.[3] "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, --- U.S. ----, 137 S. Ct. 548, 551, 196 L. Ed. 2d 463 (2017) (citation omitted) (internal quotation marks omitted). "In other words, qualified immunity shields from liability [defendants] who act in ways they reasonably believe to be lawful." *Ewell v. Toney*, 853 F.3d 911, 919 (7th Cir. 2017) (quoting *Jewett v. Anders*, 521 F.3d 818, 822 (7th Cir. 2008)) (internal quotation marks omitted). Once raised by the defendant, "a plaintiff must show (1) that the defendant violated a constitutional right, and (2) that the right was clearly established at the

---

[3] Leahy has brought both state and federal claims. The IDNR Defendants do not provide any authority for extending the qualified immunity analysis to the state law claims, and courts have concluded that qualified immunity for federal claims does not extend to claims under Illinois law. *See Horton v. City of Chicago*, No. 13-cv-6865, 2018 WL 4699790, at *14 (N.D. Ill. Sept. 30, 2018) (collecting cases). None of the parties separately address the state law claims, instead lumping them together with the federal claims. Because the substantive state claims all require lack of probable cause, to the extent the Court finds probable cause existed with respect to the federal claims, this finding also precludes Leahy from prevailing on his state law substantive claims. *See Ross v. Mauro Chevrolet*, 861 N.E.2d 313, 317, 369 Ill. App. 3d 794, 308 Ill. Dec. 248 (2006) (under Illinois law, probable cause bars false arrest and false imprisonment claims). Therefore, the Court treats the underlying claims together.

As for the civil conspiracy claims, Leahy must demonstrate an underlying violation to prevail, which means that a finding for the IDNR Defendants on all the substantive claims requires finding for them on the conspiracy claims as well. *See Katz-Crank v. Haskett*, 843 F.3d 641, 650 (7th Cir. 2016) ("Without a viable federal constitutional claim, the conspiracy claim under § 1983 necessarily fails; there is no independent cause of action for § 1983 conspiracy."); *Coghlan v. Beck*, 984 N.E.2d 132, 151, 2013 IL App (1st) 120891, 368 Ill. Dec. 407 (2013) ("[C]onspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails.").

6

time so that it would have been clear to a reasonable officer that her conduct was unlawful in the situation." *Id.*

The IDNR Defendants contend that they had probable cause to conduct the search and seizure, and, to the extent they did not, Illinois law does not require suspicion of criminal activity to search and seize hunters for violation of the Illinois Wildlife Code. Although the parties disagree as to whether the IDNR Defendants subjected Leahy to a *Terry* stop or a *de facto* arrest, as discussed below, the undisputed facts demonstrate that the IDNR Defendants had probable cause to conclude Leahy committed a trespass violation. Because the level of suspicion required to justify a *Terry* stop is less demanding than that for probable cause, the IDNR Defendants also had reasonable suspicion to conduct a *Terry* stop. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). This makes the characterization of Leahy's detention irrelevant for purposes of resolving his claims.

The existence of probable cause bars a false arrest or false imprisonment claim. *See Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010). "A police officer has probable cause to arrest an individual when the facts and circumstances that are known to him reasonably support a belief" that the individual has committed or is about to commit a crime. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007). To evaluate probable cause, the Court makes an objective examination of the facts and determines what conclusions an arresting officer might have reasonably drawn from those facts. *Id.* Under the collective knowledge doctrine, the Court can consider the officers' collective knowledge of facts to determine whether probable cause existed. *See United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018). Probable cause "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is

7

more likely true than false." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000) (citation omitted) (internal quotation marks omitted). For this reason, the fact that Leahy's ticket was dismissed does not establish that the IDNR Defendants lacked probable cause. *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998).

For a trespass case like the one here, "[p]robable cause exists where an officer could reasonably believe, given his knowledge of the facts and circumstances at the time, that the defendant committed or was committing trespass." *Kampinen v. Martinez*, 102 F. App'x 492, 497 (7th Cir. 2004). The IDNR Defendants cited Leahy for trespass in violation of 2.33(t) of the Illinois Wildlife Code, which provides that "[i]t is unlawful for any person to take or attempt to take any species of wildlife or parts thereof, . . . or to knowingly shoot a gun or bow and arrow device at any wildlife physically on or flying over the property of another without first obtaining permission from the owner or the owner's designee." 520 Ill. Comp. Stat. 5/2.33(t). To enforce this provision, the law enforcement officer "must have received notice from the owner or the owner's designee of a violation of this Section." *Id.*

The IDNR Defendants knew of a trespass complaint prohibiting hunting on the property by all but Reid and Humphrey. A reasonable officer could understand that complaint to provide notice of a violation and express authorization to act against any violators. Further, even though Cullinan Properties lodged the complaint in August 2015, Reid verified its validity and that no other exceptions had been granted on December 3, relaying this information the following day to Simon. The IDNR Defendants learned from Will County Forest Preserve District officers that James Powell, an unauthorized individual, had admitted to hunting on the property on December 4. Simon again verified the validity of the complaint on December 4 before reaching the property and even received a voicemail from Oberhelman thanking him for dealing with the

trespass issue while en route to Leahy and Powell's hunting location.  The IDNR Defendants encountered Powell and Leahy in a hunting blind on the property in hunting gear.  Armed with these facts, a reasonable officer would reasonably believe that Leahy was committing trespass. *See Murawski v. Reid*, --- F. Supp. 3d ----, 2019 WL 1584558, at *4 (N.D. Ill. Apr. 12, 2019) (finding officers had probable cause for trespass where they received an incident report of trespass and a photograph of the plaintiff on the portion of the lake the complaining individual claimed to own).

Leahy argues, however, that the IDNR Defendants did not verify the complaint with the property owner, as required by § 2.33(t) before enforcing that section, speaking instead only with the Cullinan Properties secretary.  According to Leahy, this non-compliance with § 2.33(t) stripped them of a basis to detain him.  But the trespass complaint provided the IDNR Defendants with the required notice, explicitly giving IDNR officers the authorization to take necessary enforcement action against those trespassing and hunting without authorization. Although several months old, nothing suggested to the IDNR Defendants that Cullinan Properties had revoked or modified the complaint, and the IDNR Defendants took additional steps to verify its validity.  Even if the verifications on December 3 and 4 did not technically comply with § 2.33(t)'s requirement of notice from the owner or the owner's designee, the facts known to the IDNR Defendants would reasonably suggest that they had the authority to enforce the trespass statute.  *See Selby v. Bd. of Trs. of Moraine Valley Cmty. Coll., Dist. No. 524*, No. 16 C 3489, 2018 WL 988091, at *6–7 (N.D. Ill. Feb. 20, 2018) (noting that the issue for qualified immunity purposes was whether the defendant had probable cause for a trespass violation, not whether the plaintiff actually violated the trespass statute); *People v. Wetherbe*, 462 N.E.2d 1, 4– 5, 122 Ill. App. 3d 654, 78 Ill. Dec. 285 (1984) (finding that probable cause existed for the

defendant's arrest for criminal trespass to land where the owner had requested that "the police patrol the area and keep trespassers away," even if the exact notice requirements of the statute had not been met).

Leahy further contends that Oberhelman had, through Powell, given him permission to hunt on her property, negating any basis for probable cause. Powell told the IDNR Defendants of this and the IDNR Defendants did seek to contact Oberhelman to clarify the situation. But Leahy's claimed defense does not undermine the existence of probable cause. Once the facts known to the IDNR Defendants established probable cause, they had no duty to investigate Powell and Leahy's defense. *See Burritt v. Ditlefsen*, 807 F.3d 239, 251 (7th Cir. 2015) ("Law enforcement is not required to discover more information to undermine probable cause once it has been established."); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) ("[P]olice officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established via the accusation of a credible witness."); *Kelley*, 149 F.3d at 646 (finding that officers did not need to investigate plaintiff's claim of innocence once they had established cause for trespass).

To the extent Leahy challenges the length of his detention, no reasonable juror could find a constitutional violation. Leahy argues that the IDNR Defendants detained him longer than reasonably necessary to effectuate a *Terry* stop. But because the record establishes that the IDNR Defendants had probable cause to arrest Leahy, Leahy need not have been released as quickly as possible. *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002). "Needless delay, or delay for delay's sake—or, worse, delay deliberately created so that the process becomes the punishment—violates the fourth amendment." *Portis v. City of Chicago, Ill.*, 613 F.3d 702, 705 (7th Cir. 2010). Nothing in the record suggests that the IDNR Defendants acted

out of malice or spite or engaged in delay "for delay's sake." *See Doyle v. Vill. of Wilmette*, No. 12 C 7131, 2013 WL 5304101, at *5–6 (N.D. Ill. Sept. 19, 2013) (finding no evidence existed to suggest that defendants detained him unreasonably where defendants sought to determine the viability of charges during the time of plaintiff's detention and no evidence existed of improper motives). Instead, the undisputed facts establish that the detention was prolonged at Leahy and Powell's request, with the IDNR Defendants attempting to contact Oberhelman to address Powell's claim to have permission to hunt on the property.

Finally, as for the search, the IDNR Defendants argue that the facts demonstrate that this amounted only to a patdown allowable either in connection with an investigatory stop or an arrest. *See United States v. Patton*, 705 F.3d 734, 737 (7th Cir. 2013) ("In addition to authorizing an investigatory stop when there is reason to believe a crime is being committed, *Terry* permits the officer conducting such a stop to conduct a limited search of the suspect to determine whether he is armed, when the circumstances give rise to a reasonable belief that the individual may have a weapon and thus pose a danger to the officer or others in the immediate vicinity."); *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008) ("Searches incident to arrests are valid in order to find weapons and to search for and seize any evidence on the arrestee's person in order to prevent concealment and to preserve evidence for trial."). Leahy does not meaningfully argue that the patdown violated the Fourth Amendment. Moreover, the existence of probable cause allowed for such a search, particularly in light of the presence of a rifle several feet from Leahy and Leahy's position as a police officer. *See United States v. Kincaid*, 212 F.3d 1025, 1028 (7th Cir. 2000) ("[T]here will be no Fourth Amendment violation in a search incident to arrest where the arresting officer is authorized by state or municipal law to effect a custodial arrest and the officer has probable cause to make such arrest."). Therefore, no

11

evidence supports finding that the IDNR Defendants violated the Fourth Amendment in conducting the brief patdown of Leahy.

In summary, the record establishes that the IDNR Defendants had probable cause to conclude Leahy committed trespass by hunting on the property. And nothing in the record supports finding that the IDNR Defendants exceeded the bounds of the Fourth Amendment in effectuating the search and seizure based on probable cause. As such, Leahy cannot establish a constitutional violation, providing the IDNR Defendants with qualified immunity from Leahy's § 1983 claims. And because Leahy's state law claims fail for the same reasons, the Court must enter judgment for the IDNR Defendants on the third amended complaint.[4]

## CONCLUSION

For the foregoing reasons, the Court grants the IDNR Defendants' motion for summary judgment [81]. The Court enters judgment for the IDNR Defendants on Leahy's third amended complaint and terminates this case.

Dated: May 14, 2019

_____
SARA L. ELLIS
United States District Judge

---

[4] Alternatively, the Court agrees with the IDNR Defendants that they had authorization to detain and search Leahy because he fit the hunter's profile and so § 1.19 of the Illinois Wildlife Code provided the IDNR Defendants with a basis to stop, investigate, and search him. *See People v. Layton*, 552 N.E.2d 1280, 1287, 196 Ill. App. 3d 78, 142 Ill. Dec. 539 (1990). Section 1.19 "authorizes some brief stop and investigation by a conservation officer in relation to conducting" an in-the-field examination of hunting equipment and devices. *Id.* An officer may have reason to conduct such an examination based on "indicia that the person in question is a hunter, immediately or very recently engaged in hunting." *Id.* "Such indicia might include wearing hunting garb, carrying a weapon, and carrying game or a game bag, in conjunction with location in or near a hunting situs." *Id.* An individual fitting this hunter's profile impliedly consents to a search. *Id.* Leahy does not address this argument except to argue that it did not authorize the length of his detainment. But he does not contest that he fit the hunter's profile or that, as a result, he impliedly consented to at least a brief stop and search. As for the length of the detainment, as discussed above, the facts demonstrate that it extended beyond a brief stop because the IDNR Defendants sought to address Leahy and Powell's request to contact Oberhelman to clarify the situation. This alternative basis would also warrant entry of judgment for the IDNR Defendants.